Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ADIL TRINIDAD ROSA<br><br>Demandante-Recurrida<br><br>v.<br><br>CAPPS, LLC Y OTROS<br><br>Demandada- Peticionaria | KLCE202300809 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm. AR2022CV00724<br><br>Sala: 401<br><br>Sobre: LEY DE CORPORACIONES |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de septiembre de 2023.

Comparece ante nos, el Sr. Josué Arroyo Valentín (en adelante, "Sr. Arroyo Valentín" o "peticionario"), quien presenta recurso de *Certiorari* en el que solicita que se deje sin efecto la *Orden* emitida el 2 de junio de 2023, notificada el 5 de junio de 2023, por el Tribunal de Primera Instancia, Sala Superior de Arecibo. Mediante dicha *Orden,* el Tribunal refirió a las partes a participar en un proceso de mediación compulsoria. Posteriormente, el 19 de junio de 2023, el peticionario presentó *"Moción de Reconsideración"* la cual fue declarada *"No ha lugar"* el 21 de junio de 2021.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, procederemos a resolver por los fundamentos que expondremos a continuación.

I

El 27 de abril de 2022, el Sr. Adil Trinidad Rosa (en adelante "Sr. Trinidad Rosa") presentó *Demanda* contra de CAPPS, LLC;

Josué D. Arroyo Valentín y Biopharma CMC Consulting Services, Inc. (en adelante "Biopharma"). Entre otras cosas, solicitó acceso a información y/o récords corporativos y la disolución de la corporación de responsabilidad por vía judicial. Además, alegó menoscabo de oportunidades corporativas e inobservancia de los deberes de fiducia.

El 20 de julio de 2022, la parte co-demandada Biopharma presentó *Contestación a Demanda*, donde arguyó que, según los términos y condiciones del Acuerdo Operacional, los miembros pactaron utilizar la mediación privada en caso de que surja una disputa en el curso normal de los negocios, por lo que solicitaron que se declare no ha lugar la *Demanda* presentada por el Sr. Trinidad Rosa.

Ahora bien, el 3 de marzo de 2023, el peticionario presentó *Moción de Desestimación por Falta de Jurisdicción*. Alegó que, el Tribunal de Primera Instancia carecía de jurisdicción sobre la materia puesto a que, en el Acuerdo Operacional otorgado, se pactó que en caso de disputas que surjan del curso normal de los negocios, las partes se someterán al proceso de mediación privada. El Sr. Trinidad Rosa se opuso y arguyó que, según la mencionada cláusula, los miembros de CAPPS no se obligaron a resolver todas las disputas que surjan, sino aquellas que se dan en el curso ordinario de los negocios. Además, planteó que la controversia presentada ante el Tribunal de Primera Instancia no es de naturaleza rutinaria u ordinaria en el manejo de los negocios, mas bien, son desviaciones e incumplimientos con el Acuerdo Operacional que los miembros de la compañía suscribieron.

En cambio, el 27 de marzo de 2023, el Sr. Arroyo Valentín presentó *Breve Réplica a Moción de Desestimación*, solicitando al Tribunal de Primera Instancia que declarara dicha moción "Ha Lugar". Luego de presentadas las posturas de todas las partes, el 29

de marzo de 2023, el *foro a quo* emitió Resolución en la cual declaró "No Ha Lugar" la *Moción de Desestimación por Falta de Jurisdicción.* Sin embargo, el Tribunal de Primera Instancia paralizó los procedimientos judiciales y ordenó a las partes a cumplir con la mediación acordada e informar el resultado o etapa de ésta en noventa (90) días.

A su vez, el 3 de abril de 2023 el Sr. Trinidad Rosa presentó *Moción en Torno a Resolución para Encaminar el Proceso de Mediación y Solicitud de Orden.* En síntesis, recomendó al Tribunal de Primera Instancia que se asigne el caso al Centro de Mediación de Conflictos de la Rama Judicial. Es por esto, que, el 14 de abril de 2023, el Tribunal de Primera Instancia emitió orden concediéndole a las partes un término de veinte (20) días, para que presentaran su posición en cuanto a dicha moción. En cumplimiento con la orden emitida por el Tribunal de Primera Instancia, el Sr. Arroyo Valentín expresó que no estaba de acuerdo con que se refiera el caso al Centro de Mediación de Conflictos de la Rama Judicial. Por su parte, Biopharma compareció mediante *Moción en Cumplimiento de Orden* y señaló que estaba de acuerdo con que se cumpla con el proceso de mediación compulsoria como lo establece el Acuerdo Operacional otorgado por las partes. Siendo así, el 2 de junio de 2023, el Tribunal de Primera Instancia emitió orden en la cual remitió a las partes al Centro de Mediación de Conflictos del Poder Judicial.

En desacuerdo, el 19 de junio de 2023, el peticionario presentó *Moción de Reconsideración* y adujo que, lo ordenado por el Tribunal de Primera Instancia iba en contra de lo pactado debido a que suscribieron un Acuerdo Operacional que establecía que, en caso de controversias que surjan del curso normal de los negocios, los miembros acudirán al proceso de mediación, en el cual los miembros elegirán un mediador independiente por elección de la mayoría de los miembros que componen CAPPS, LLC. Por lo que, el

peticionario solicitó al Foro de Instancia que emitiera una orden obligando a las partes a cumplir con el Acuerdo Operacional pactado. Atendida la solicitud, el 22 de junio de 2023, el Tribunal de Primera Instancia emitió Orden declarando no ha lugar la *Moción de Reconsideración.*

Insatisfecho con la determinación, el Sr. Arroyo Valentín recurrió ante este foro apelativo y planteó la comisión de los siguientes errores.

A. <u>Primer Error</u>: Erró el TPI a [sic] ordenar a las partes a mediar ante el Centro de Mediación de Conflictos cuando conforme a *Paine Webber v. Sociedad de Gananciales*, supra, el tribunal carece de jurisdicción.

B. <u>Segundo Error:</u> Erró el TPI a [sic] ordenar a las partes a mediar ante el Centro de Mediación de Conflictos cuando el Art. V (24) del Acuerdo Operacional de la Compañía establece que solo una mayoría de los Miembros pueden seleccionar el foro y el mediador independiente cualificado para dilucidar toda disputa o controversia entre ellos.

C. <u>Tercer Error:</u> Erró el TPI a [sic] determinar que los procedimientos judiciales estarán paralizados hasta tanto se agote el remedio alterno de la mediación que el mismo no tiene fuerza para obligar a un acuerdo entre las partes, pese el Art. V (24) del Acuerdo Operacional claramente establece que tendrá que dilucidarse toda disputa y/o controversia ante un mediador independiente cualificado.

D. <u>Cuarto Error:</u> Erró el TPI a [sic] determinar que las partes puede beneficiarse de los servicios del Centro de Mediación de Conflicto cuando la R. 7.10 (a) y (b) del Reglamento de Métodos Alternos para la Solución de Conflicto, según enmendado, claramente establece que el proceso de la mediación se dará por concluido por cualquiera de las partes involucradas, una o ambas partes se retiran del proceso, pese que la mediación pactada bajo el Acuerdo Operacional es una compulsoria e impide que las partes se retiren hasta tanto se dilucide toda disputa y/o controversia entre los contratantes.

II

**A. *Certiorari***

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido.[1] La Regla 52.1 de Procedimiento Civil[2], establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones, sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia.[3] En lo pertinente, la Regla 52.1, *supra,* dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Por otra parte, la Regla 52.2(b)[4] establece los términos y efectos de la presentación de un recurso de *certiorari*:

> (b) *Recurso de "certiorari".* Los recursos de *certiorari* al Tribunal de Apelaciones para revisar las resoluciones finales en procedimientos de jurisdicción voluntaria […] deberán ser presentados dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de copia de la notificación de la sentencia o resolución recurrida.
>
> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia […] deberán presentarse

---

[1] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR ___ (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012).
[2] 32 LPRA Ap. V, R. 52.1.
[3] *Id.*; *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 709 (2019).
[4] 32 LPRA Ap. V, 52.2(b)

dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

En aquellos casos que mediante recurso de *certiorari* se paralicen los procesos ante el Tribunal de Primera Instancia, el Tribunal de Apelaciones deberá resolver la controversia presentada ante sí dentro de los sesenta (60) días siguientes a que las partes concernidas se hayan expresado.

La discreción del tribunal revisor no debe abstraerse del resto del Derecho, y por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera.[5] Así pues, la discreción judicial para expedir o no el auto de *certiorari*, no ocurre en un vacío ni en ausencia de parámetros.[6] Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[7], orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari*.[8] La referida regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

---

[5] *Torres González v. Zaragosa Meléndez*, 211 DPR ___ (2023); *Mun. Caguas v. JRO Construction, supra*, 712; *IG Builders et al. v. BBVAPR, supra*, 338.
[6] *Id.*
[7] 4 LPRA Ap. XXIII-B, R. 40.
[8] *Torres González v. Zaragosa Meléndez, supra*; *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra*; *Mun. Caguas v. JRO Construction, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, págs. 404-405; *IG Builders et al. v. BBVAPR, supra*, págs. 338-339.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que, el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso.[9] Es por ello que, los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado.[10] Nuestro ordenamiento jurídico ha establecido que, el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[11]

## B. *Jurisdicción*

Por su parte, "[l]a jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias. Para que el tribunal pueda atender y adjudicar un caso debe tener tanto jurisdicción sobre la materia como sobre las partes litigiosas.[12]". El Tribunal Supremo de Puerto Rico, ha definido en varias ocasiones la jurisdicción sobre la materia "como la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal".[13] Por tanto, cuando no hay jurisdicción sobre la materia, el tribunal carece de autoridad y poder para entender en el asunto. "La Jurisdicción no puede ser otorgada por las partes y el

---

[9] *Pueblo v. Díaz De León,* 176 DPR 913, 918 (2009).
[10] *Id.*
[11] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra; Cruz Flores et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).
[12] *Shell v. Secretario de Hacienda,* 187 DPR 109, 122 (2012).
[13] *Cobra Acquisitions, LLC v. Municipio de Yabucoa,* 210 DPR 384, 395 (2022).

tribunal tampoco puede abrogársela. Sólo el Estado, a través de sus leyes, puede otorgar o privar de jurisdicción sobre la materia a un tribunal".[14]

Por otro lado, La Ley General de Corporaciones en su Art. 19.11[15], establece lo siguiente:

> **Toda acción para interpretar, aplicar o hacer cumplir las disposiciones de un contrato de compañía de responsabilidad limitada**, o los deberes, obligaciones o responsabilidades de una compañía de responsabilidad limitada a los miembros o administradores de la compañía de responsabilidad limitada, o los administradores, deberes, obligaciones o responsabilidades entre los miembros o administradores y de los miembros o administradores de una compañía de responsabilidad limitada, o los derechos o poderes de, o restricciones sobre, la compañía de responsabilidad limitada, los miembros o administradores, **podrán presentarse en el Tribunal de Primera Instancia.** (Énfasis Nuestro).

Además, La Ley General de Corporaciones en su Art. 19.20,[16] otorga a los miembros de una corporación el derecho de solicitar acceso a la información de la compañía y a resolver cualquier controversia que surja al amparo de este Artículo en el Foro de Instancia.

## C. *Interpretación contractual*

En nuestra jurisdicción opera el principio de libertad de contratación. El Art. 1207 del Código Civil de Puerto Rico de 1930, establece que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público." [17] Por ende, una vez perfeccionado dicho contrato, éste tiene fuerza de ley entre las partes.[18]

---

[14] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 709 (2014).
[15] Ley Núm. 164 de 2009, según enmendada, 14 LPRA sec. 3951.
[16] Ley Núm. 164 de 2009, según enmendada, 14 LPRA sec. 3970.
[17] Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3372. En el presente recurso son de aplicación las disposiciones del derogado Código Civil de 1930 debido a que el Acuerdo Operacional fue suscrito en el año 2017.
[18] Art. 1044 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2995.

Siendo así, cuando las partes otorgan un contrato, y éste es claro, el contrato debe interpretarse en el sentido literal de la palabra, conforme al Art. 1233 del Código Civil de Puerto Rico de 1930, el cual expresa que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas".[19]

La Ley General de Corporaciones, en su Art. 19.01(g), define los contratos de compañías de responsabilidad limitada de la siguiente manera:

> Significa aquel contrato escrito (sea llamado contrato de compañía de responsabilidad limitada, contrato operacional, o de cualquier otra forma), adoptado por los miembros de una compañía de responsabilidad limitada para regir los asuntos internos y administración de la compañía de responsabilidad limitada. Un contrato de compañía de responsabilidad limitada será válido aun cuando la compañía de responsabilidad limitada tenga un solo miembro. Un contrato de compañía de responsabilidad limitada podrá proveer derechos a cualquier persona, incluyendo una persona que no sea parte del contrato de compañía de responsabilidad limitada, según dispuesto en dicho contrato. [20]

Dicha ley, además, en su Art. 19.11[21], establece que, en caso de controversias con la interpretación del contrato, las partes podrán presentarse ante el Tribunal de Primera Instancia. Es decir, el Foro de Instancia tiene jurisdicción para atender cualquier controversia en cuanto a interpretación del acuerdo operacional otorgado por las partes.

Por su parte, el Tribunal Supremo de Puerto Rico expresó lo siguiente:

> Las partes se obligan a todos los extremos
> de lo pactado que sean conformes a la ley, a la

---

[19] Art. 1233 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3471
[20] Ley Núm. 164 de 2009, según enmendada, 14 LPRA sec. 3951
[21] Ley Núm. 164 de 2009, según enmendada, 14 LPRA sec. 3961

moral y al orden público. Por otro lado, **la atadura o vínculo contractual tiene sus límites en la voluntad expresa de las partes y, claro está, en todo aquello que sea derivado de las expectativas razonables de lo que la buena fe dicta respecto a la relación contractual**. *Paine Webber Inc. v. Sociedad de Gananciales*, 151 DPR 307 (2000). (Énfasis Nuestro). [22]

### III.

En el presente caso, el Peticionario, alega que erró el Tribunal de Primera Instancia al referir a las partes al Centro de Medicación de Conflictos, dado a que este carece de jurisdicción sobre la materia.

Según el derecho antes esbozado entendemos que, el Tribunal posee jurisdicción para atender la controversia, esto debido a que la Ley General de Corporaciones establece que el Tribunal de Primera Instancia es el foro adecuado para dilucidar las disputas que **giren en torno a la interpretación de los contratos**. Además, el propio Acuerdo Operacional que otorgaron las partes en el Art. XIII (47) establece lo siguiente:

> 47. Specific Performance. Each Member agrees with the other Members that the other Members would **be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event.** Accordingly, it is agreed that, in addition to any other remedy to which the nonbreaching members maybe entitled, at law or in equity, the nonbreaching Members shall be entitled to injunctive relief to prevent breaches of this Agreement and, specifically, **to enforce the terms and provisions of this Agreement in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.** (Énfasis Nuestro).

Por tanto, según lo antes planteado, el Tribunal General de Justicia posee jurisdicción para atender las controversias presentadas. Por otro lado, las partes no presentaron reconsideración en cuanto a la determinación realizada por el Foro

---

[22] *PaineWebber Inc. v. Sociedad de Gananciales*, 151 DPR 307, 312 (2000).

Primario el 29 de marzo de 2023, por lo que, esta determinación es ley del caso.

Ahora bien, los demás errores planteados giran en torno al proceso de mediación por lo que se discutirán en conjunto por estar íntimamente relacionados entre sí.

En nuestra jurisdicción opera el principio de *pacta sunt servanda,* el cual obliga a las partes a cumplir con lo pactado entre las partes. El Art. 1233 del Código Civil de Puerto Rico de 1930, expresa que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas. [23]".

En el caso ante nos, las partes pactaron mediar cualquier conflicto que **surja del curso normal de los negocios**. Como antes discutimos, las cláusulas de los contratos se deben interpretar de manera literal, siempre que estas sean claras y libre de ambigüedades. El acuerdo otorgado por las partes, en su Art. V (24), tiene una cláusula de mediación la cual lee como sigue:

> 24.Mediation. **In the event of dispute arising in the normal course of business**, the members agree to submit the resolution of dispute to a qualified independent third-party mediator. The selection and appointment of said mediator shall be determined by a majority of members. Evidence of the selection shall be by Minutes or Resolution reflecting the selection, signed by a majority of the members, or the President and Secretary. (Énfasis Nuestro).

No obstante, en el presente caso, **el Sr. Trinidad Rosa está solicitando acceso a los récords de la compañía y la liquidación de ésta,** además de argumentar el incumplimiento al Acuerdo Operacional por parte del Sr. Arroyo Valentín. Siendo así, entendemos que, esto no es el curso ordinario de una Corporación.

---

[23] Código Civil de Puerto Rico de 1930, *supra.*

Concluimos que el incumplimiento del Acuerdo Operacional y la solicitud de la liquidación de la compañía no son "prácticas diarias" para la explotación de los negocios.

Tomando en consideración lo antes mencionado, el propio acuerdo provee un mecanismo para cuando la controversia gire en torno al **incumplimiento del contrato operacional** otorgado por los miembros de la compañía. En su Art. XIII (47), anteriormente citado, las partes pactaron que en caso de que alguno de los miembros no cumpla con lo establecido por el Acuerdo Operacional, los restantes de los miembros tendrán derecho a cualquier acción correspondiente en las cortes de los Estados Unidos. Consistente con lo anteriormente discutido, las partes se sometieron a la Jurisdicción del Tribunal General de Justicia del Estado Libre Asociado de Puerto Rico, por lo que, le corresponde al Foro Primario atender la controversia.

Siendo así, entendemos que **erró el Tribunal de Primera Instancia al referir el caso a mediación, a razón de que la controversia planteada no es del curso normal de los negocios**. Mas bien, se trata de alegaciones de daños por el incumplimiento al Acuerdo Operacional por parte de un miembro de la compañía, para el cual dicho contrato provee un remedio en su Art. XIII (47), el cual discutimos anteriormente.

Por su parte, el Foro de Instancia fundamentó su decisión de paralizar los procedimientos y referirlos al Centro de Mediación de Conflictos, en el caso de *Paine Webber Inc. v. Sociedad de Gananciales*[24]. Es por esto por lo que, entendemos meritorio distinguir entre el caso antes mencionado y el que tenemos ante nuestra consideración. En el caso de *Paine Webber Inc. v. Sociedad de Gananciales*[25], las partes acordaron someterse a un proceso de

---

[24] *PaineWebber Inc. v. Sociedad de Gananciales, supra.*
[25] *Id.*

**arbitraje compulsorio**, mientras que, en el caso ante nos, el pacto de mediación está condicionado a que la disputa sea por el curso normal de los negocios y no por cualquier otra controversia.

Entendemos que el presente asunto trata sobre presuntos incumplimientos del Acuerdo Operacional y la liquidación de la Compañía de Responsabilidad Limitada, lo cual reiteramos, no es el curso normal de los negocios. Por lo tanto, lo correspondiente es cumplir con lo pactado según el Art. XIII (47) y que se ventile la mencionada controversia en el Tribunal de Primera Instancia en un proceso judicial ordinario y no en un proceso de mediación.

**IV**

Por los fundamentos expuestos, los cuales se hace formar parte de esta Sentencia, expedimos el auto de *Certiorari,* se revoca la "Orden" presentada ante nos, en la cual se refirió a las partes al Centro de Mediación y Conflicto, y se modifica a los efectos que sea el Tribunal de Primera Instancia quien adjudique la controversia de forma indelegable.  Así modificada se devuelve para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones